# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ROBERT A. JACKSON,<br>　　Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 1:17-CV-296-PRC |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Robert A. Jackson on July 14, 2017, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 19], filed by Plaintiff on January 23, 2018. Plaintiff requests that the January 29, 2016 decision of the Administrative Law Judge denying his claim for supplemental security income be reversed and remanded for further proceedings. On April 3, 2018, the Deputy Commissioner filed a response, and Plaintiff filed a reply on May 15, 2018. For the following reasons, the Court grants Plaintiff's request for remand.

## BACKGROUND

Plaintiff filed an application for supplemental security income on January 31, 2014. His claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on November 18, 2015, and presided over by Administrative Law Judge (ALJ) Daniel Balutis. Present at the hearing were Plaintiff, his attorney, and an impartial vocational expert.

The ALJ issued a written decision on January 29, 2016, concluding that Plaintiff was not disabled based on the following findings:

1.　The claimant has not engaged in substantial gainful activity since January 31, 2014, the application date.

2. The claimant has the following severe impairments: spondylosis of the lumbar spine, degenerative disc disease of the thoracic spine, obesity, obstructive sleep apnea (OSA), chronic obstructive pulmonary disease (COPD), asthma, depression, generalized anxiety disorder (GAD), a bipolar disorder and an alcohol use disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders, ropes and scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant can have frequent exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, weather, humidity/wetness, gas, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibration. The claimant is further limited to performing simple routine tasks, making simple work-related decisions, and frequent contact with supervisors, co-workers and the public.

5. The claimant is capable of performing past relevant work as a Product Assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
. . .
In the alternative (Step 5), considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform.

6. The claimant has not been under a disability, as defined in the Social Security Act, since May 28, 2013, the date the application was filed.

(AR 13-22). Plaintiff then sought review before the Agency's Appeals Council, which denied his request, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On July 14, 2017, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.

2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from

4

engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal of the ALJ's decision and remand for further proceedings. In support of the requested relief, Plaintiff argues that the ALJ erred in weighing the medical opinions and in determining Plaintiff's mental RFC.

**A. Weight to Medical Opinions**

In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 416.927(b). The ALJ evaluates every medical opinion received. *Id.* § 416.927(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id.* § 416.927(e)(2).

When an ALJ is assigning weight to a non-treating physician's opinion, the ALJ considers several factors and must explain in the decision the weight given to each opinion. 20 C.F.R. §§ 404.1527(c), (f), 416.927(c), (f); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Social Security Ruling ("SSR") 96-5p clarifies that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." 1996 WL 374183, at *4 (July 2, 1996).

*1. Consultative Examiner Dr. Roy*

Consultative psychological examiner Dr. Roy opined that Plaintiff was severely impaired in his ability to understand, remember, and carry out simple instructions; would most likely be

6

incapable of managing money; and was severely impaired in his ability to interact in a reasonably effective and stable manner with the public, co-workers, and supervisors. (AR 820).

The ALJ assigned "only partial weight" to Dr. Roy's opinions, stating that "they are not consistent with a range of evidence from office visit notes noting largely mild to moderate problems." (AR 20). The ALJ also faulted Dr. Roy for "[appearing] to take the claimant's poor effort during the exam as demonstrative of his true ability."*Id.*

Plaintiff argues that the ALJ cherry-picked from the record in finding that Plaintiff's impairments were "largely mild to moderate." This argument is well taken. The ALJ does not cite any particular office visit notes in his discussion of Dr. Roy's opinion. Previously in the decision, though, the ALJ noted medical records reporting "moderate" or "mild to moderate" problems with social functioning and decision making, which are located at pages 740, 782, and 900 of the Administrative Record.

However, the ALJ ignored the evidence that supports Dr. Roy's opinion regarding social interaction. January 29, 2014 office notes indicate "[a] severe degree of work problems including aggressive behavior toward peers or superiors or severe attendance problems is evidenced." (AR 736). An assessment signed January 8, 2015, found dangerous or disabling needs in regard to career aspirations, job time, job attendance, job performance, job relations, and job skills. (AR 1177). Other records show poor judgment, (AR 873), and mood fluctuation (AR 889, 896), among other findings. Further, the opinions of state agency reviewing psychologists, given great weight by the ALJ, also support Dr. Roy's opinion regarding social functioning. The state physicians opined that, as a result of limitations in the ability to interact appropriately with the general public, accept instructions, respond appropriately to a supervisor's criticism, and maintain socially appropriate behavior,

7

Plaintiff "could not work with the general public or in jobs which require intensive, interpersonal contact with others," and "could work with a supervisor who was normally considerate and positive, but would have problems with a supervisor who was often negative, critical, or quarrelsome." (AR 174).

The Deputy Commissioner asserts that Plaintiff has failed to indicate how these records correspond to work-related limitations or how the ALJ's assignment of partial weight is undermined, but the ALJ found that Plaintiff could have "frequent contact with supervisors, co-workers and the public." (AR 15). Regulations provide that an activity occurring "frequently" occurs up to two-thirds of a work day. SSR 83-10, 1983 WL 312151, *6 (Jan. 1, 1983). The ALJ erred in determining that evidentiary support does not exist for Dr. Roy's opinion regarding Plaintiff's social interaction limitations, and if the opinion were accepted, the RFC finding of frequent contact with others would need to be reconciled with this opinion. Remand is required on this basis.

Plaintiff further objects to the ALJ's characterization of Plaintiff's effort at the consultative examination as "poor." Plaintiff states that Dr. Roy never noted that Plaintiff had "poor" effort. Instead, she noted that he made "limited effort" on proverb interpretation and had "inconsistent" performance regarding concentration and attention. Notably, these statements were about specific categories of the mental status examination, whereas the ALJ implies that Plaintiff exhibited poor effort throughout the entirety of the examination.

The Deputy Commissioner responds that Dr. Roy's observations of limited effort regarding proverb interpretation and inconsistent performance regarding concentration and attention show that the ALJ properly concluded that Dr. Roy relied too heavily on Plaintiff's subjective complaints.

The ALJ is given the responsibility to evaluate Plaintiff's subjective symptoms, a determination which Plaintiff does not contest in this litigation. However, on remand, if the ALJ makes the same finding regarding Plaintiff's effort, the ALJ should clarify how he determined that "limited effort" and "inconsistent performance" in specific areas of the mental status exam show that the entirety of Dr. Roy's opinion is due less weight and not just matters opined to in those specific areas.

Plaintiff also argues that his GAF scores do not support a finding of mild to moderate problems and are evidence that support Dr. Roy's opinion. The ALJ gave the GAF scores little weight, as they are one-time measures of function and the scores in the record fell in a broad range, from 30 to 70. The ALJ also noted that Plaintiff improved with medication and therapy. The GAF scoring system was phased out in the American Psychiatric Association's 2013 release of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). Despite its removal from DSM-5, the Social Security Administration still considers GAF scores to be opinion evidence. *See* Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013) (hereinafter "AM-13066"). The Seventh Circuit Court of Appeals has recognized that a GAF score is "useful for planning treatment" but does not necessarily reflect a patient's functional level, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), and the Social Security Administration instructs that "[b]y itself, the GAF cannot be used to 'raise' or 'lower' someone's level of function," and "[a] GAF score is never dispositive of impairment severity," AM-13066. Due to remand being required on other grounds, the Court need not resolve the issue of GAF scores here.

2. *State Agency Reviewers Dr. Levko and Dr. Larsen*

9

Plaintiff argues that the "great weight" given to State Agency Psychologists Levko and Larsen is in error because the opinions are internally inconsistent and are contrary to Social Security rules and regulations.

First, Plaintiff asserts that statements that Plaintiff is moderately limited in (1) his ability to perform within a schedule, maintain regular attendance, and be punctual within accepted tolerances and (2) his ability to complete normal workdays and workweeks without interruptions from his psychological symptoms and to perform work at a consistent pace with a reasonable number and length of breaks are inconsistent with the narrative discussion that Plaintiff's pace would be within normal limits, is capable of maintaining a schedule, and tardiness or absenteeism would be a matter of choice rather than effects of a mental disorder. The form on which the opinion is given clarifies that the mental RFC is the narrative discussion and not the statements of moderate limitation. Still, the apparent inconsistency in the opinion is troubling. On remand, the ALJ should discuss this apparent inconsistency and how it was taken into account in assigning weight to these opinions.

Plaintiff next faults the opinions for offering an opinion as to whether Plaintiff can perform unskilled work. The Deputy Commissioner concedes that the Program Operations Manual System (POMS) states that such an opinion should not have been given. *See* POMS Section DI 24510.065. The Court agrees with the Deputy Commissioner, however, that Plaintiff has not shown harm from this error. The error should be addressed on remand, but Plaintiff has not provided a basis for remand on this issue.

In the final, short paragraph of argument of Plaintiff's opening brief, Plaintiff asserts error in the psychologists' finding that Plaintiff could manage the stress of unskilled work. Plaintiff argues that, per Social Security Administration Ruling 85-15, stress is subjective and not dependent on a

job's skill level. Plaintiff does not identify any specific passage of the ruling in support. Because remand is required on another basis and because this argument is not well developed, the Court declines to address the matter in greater detail.

**B. Mental RFC**

The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's

impairments, even those that would not be considered severe in isolation." *Terry*, 580 F.3d at 477; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff challenges only the ALJ's determination of Plaintiff's mental RFC and not his physical RFC. Specifically, Plaintiff argues that the ALJ failed to incorporate Plaintiff's moderate degree of limitation in concentration, persistence, and pace into the RFC. The ALJ found that Plaintiff's RFC included simple routine tasks and simple work-related decisions.

Dr. Levko and Dr. Larsen, whose opinions were given great weight, found that Plaintiff is moderately limited in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 173, 187). The narrative discussion clarifies, however, that Plaintiff's pace would be within normal limits, that he can attend to a task for two hours at a time, and that he can perform unskilled tasks. (AR 174, 189). Here, where the experts opined that Plaintiff's pace and persistence were within accepted tolerances, the limitations found by the ALJ appear to correspond with Plaintiff's concentration abilities as opined by the accepted medical opinions.

## C. Other Matters

Though not raised by Plaintiff, the Court notes that consultative examiner Dr. Bacchus opined that Plaintiff could work in a temperature stable and safety sensitive work environment. The ALJ gave great weight to this opinion. However, without explanation, the ALJ found that Plaintiff could work in conditions including frequent exposure to unprotected heights, moving mechanical

parts, extreme cold, and extreme heat. If pertinent to the outcome on remand, this matter should be resolved through explanation or a change in findings.

## CONCLUSION

For these reasons, the Court **GRANTS** the relief sought in the Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 15th day of August, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT